UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DARIAN REESE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:17-CV-105-TLS |
| | ) |
| ZIMMER PRODUCTION, INC. a/k/a | ) |
| ZIMMER BIOMET, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This litigation arises out of Plaintiff Darian Reese's termination of employment with Defendant Zimmer Production, Inc. The Plaintiff claims that the Defendant violated the Family Medical Leave Act (FMLA) and the Americans with Disabilities Act (ADA) when it assigned him attendance points for absences that, he contends, should have been designated as FMLA-qualifying leave, or provided as a reasonable accommodation under the ADA.

The Defendant has moved for summary judgment, which the Plaintiff opposes with respect to the two claims he is still pursuing: the FMLA interference claim and ADA failure to accommodate claim. The Plaintiff does not dispute the entry of summary judgment for the ADA discrimination or retaliation claims raised in his Complaint. For the reasons stated in this Opinion and Order, the Court grants the Defendant's Motion for Summary Judgment [ECF No. 29].

## STATEMENT OF FACTS

The Plaintiff was a production worker at the Defendant's facility from October 2008 through October 14, 2015. The Defendant has policies governing employee attendance and the

taking of FMLA leave. The policies are available to employees on the Defendant's intranet site, which can be accessed through in-house computers.

The attendance policy tells employees that they are responsible to report all absences and tardies to their supervisor. The policy uses a point system for absences that leads to progressive discipline. Absences of more than four hours are counted as 4 points; tardies are counted as 2. The accumulation of 12 points in a rolling six-month period results in a written warning, another 12 points in six months results in a Final Warning, and 12 additional points results in termination from employment.

When the employee provides medical documentation substantiating the absence, the point-tallying system is modified. Absences up to, but fewer than, four consecutive days (with appropriate medical documentation) count as only one absence for purposes of assigning points (i.e. 4 attendance points). A fourth consecutive day of absence counts as an additional absence, and each consecutive day afterwards counts as an additional absence. For example, an employee who misses five consecutive working days will incur three full-day absences, or 12 points—unless the employee receives authorization for FMLA or short-term disability (STD) leave. Approved FMLA and STD leave, as well as sick time taken in accordance with the Defendant's sick time policy[1] do not count toward disciplinary action. The attendance policy directs employees to contact the Defendant's third party administrator for further information on

---

[1] Under the sick time policy, employees can be absent for their own illness or injury, or non-emergency medical appointments that are scheduled in advance with supervisor approval. Employees may also use sick days to care for an ill or injured spouse, child, or domestic partner, or to accompany them to a medical or dental appointment. Additionally, the Defendant's policy recognizes that "employees may occasionally need time off work on an unplanned bases for non-medical reasons" and permits up to two sick days per year to be used on a call-in basis that will not trigger points under the attendance policy. (Attendance Policy, Ex. 12 to Pl.'s Dep., ECF No. 34 at 28.) Employees who have exhausted available sick time can use available flex time opportunities to cover additional time off.

2

the FMLA policy or disability benefits program.

The Defendant's FMLA policy requires that its employees provide notice both to the Defendant and to its third party FMLA administrator, Unum. If the need for leave is known in advance, an employee must notify Unum at least thirty days in advance. If the need for leave is not known in advance, the notice must be provided within two business days of realizing the need for leave, absent proven extenuating circumstances that prevented timely notice. For intermittent FMLA leave, if advance notice is not possible, employees must notify Unum within two business days from the absence. Employees are warned that failure to provide timely notice to both their supervisor and Unum may result in full or partial denial of approved leave and consequences under the attendance policy.

While working for the Defendant, the Plaintiff took approved FMLA leave in 2011 and again in 2014. In 2011, the Defendant requested and received continuous FMLA leave for a hernia repair. When the leave was approved, and later extended, he received and read two letters from Unum, each which reiterated the two-day notice requirement. The Plaintiff also requested and received intermittent FMLA leave in 2014 for migraines. He provided notice to Unum on June 16 for his June 14 leave. When the leave was approved, he received and read two letters from Unum, each which included the identical reminders about the two-day notice requirement for reporting new and intermittent FMLA leaves. The Plaintiff understood that to request the intermittent leave, he had to call both Unum and his employer. (Pl.'s Dep. 72, ECF No. 30-2.)

The Plaintiff was denied FMLA coverage for absences on two days in June 2014 and again for a day in July 2014 due to his failure to notify Unum within two days of those absences. The letters he received from Unum warned about the timely reporting of absences in

3

accordance with his employer's policy.

The Plaintiff was absent from work from July 27[2] through August 4, 2015, during which time he attempted to determine what was causing a severe rash on his arm, as well as swelling in his legs and feet. He visited the emergency room, his family doctor, and his cardiologist. Ultimately, the Plaintiff was diagnosed with Urticaria (hives) and dermatitis, which the Plaintiff described as severe eczema. The resulting infection was treated with two weeks of antibiotics and steroids. The Plaintiff continued to use topical steroids to treat flare-ups of the condition. In mid or late August, the Plaintiff cardiologist diagnosed him with venous insufficiency and prescribed medication to help control the swelling.

In accordance with the Defendant's attendance policy, the Plaintiff called the Defendant to report these absences. The Plaintiff's second-shift supervisor was Ed Semla. The Plaintiff also reported to Dustin Dulebohn, the first-shift supervisor who had authority over Semla, but the record does not indicate which of these supervisors the Plaintiff called, if either. When the Plaintiff returned to work on August 5, Dulebohn asked the Plaintiff if he had called Unum. The Plaintiff replied that he had not, and Dulebohn advised him to do so as soon as possible.

The Plaintiff testified that he called Unum the next day, on August 6, to request FMLA coverage for the absences. Unum's business records show that the Plaintiff called on August 10 to request FMLA leave for July 25 through August 4, 2015. On August 11, 2015, the Plaintiff received and read a letter from Unum stating that his August 10 request for FMLA leave was not approved because he had not reported his need for leave within the time frame required by the

---

[2] The Court has located conflicted dates in the record regarding when the Plaintiff was first absent in July. The parties refer often to July 27, but some of the attached records cite July 25, 2015, as the first date of his consecutive absences that extended through August 4, 2015. The discrepancy does not involve a material fact, as it makes no difference to the outcome of the case.

Defendant. According to Unum, the Plaintiff also had a request for STD leave, which was still pending. The Plaintiff was again absent from work from August 13 through 19, 2015, returning on August 20, then again from August 24 through 28, 2015.

In late September and into October, the Defendant attempted to determine the status of the Plaintiff's absences, particularly when he did not qualify for STD leave. The Plaintiff had accumulated more than enough points to warrant a Final Written Warning and termination unless his absences qualified as FMLA or STD leave. On October 2, 2015, the Defendant suspended the Plaintiff from employment pending its investigation into his absences and the accumulation of points under the attendance policy. The timeliness of the Plaintiff's notice to Unum became an issue in making this determination. Unum had not granted FMLA approval for any of the absences due to the Plaintiff's failure to report the absences within the Defendant's two-day notice requirement. During the investigation, Unum informed the Defendant that the Plaintiff called Unum on August 10 regarding the July 27 through August 4 absences, and that he called Unum's STD Unit on September 21 for the August 14 through 18 absences. Unum did not consider the Plaintiff's assertion that he was not aware of the requirement to provide notice within two days of his absences as an extenuating circumstance that excused his failure to provide the proper notice.

The Plaintiff's employment was terminated effective October 13, 2015, due to the accumulation of points under the attendance policy. Olga Rivera, the Human Resource manager at the foundry, made the termination decision in reliance on Unum's report that the Defendant did not follow the Defendant's notice requirement for his July and August absences, and her conclusion that he did not show any extenuating circumstances that would have prevented him

from providing timely notice.

## ANALYSIS

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is the moment in litigation where the non-moving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Although facts and reasonable inferences are construed in favor of the nonmoving party, this does not extent to inferences supported only by speculation or conjecture. *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997).

### A.  FMLA Interference Claim

The FMLA entitles an eligible employee to take up to twelve work weeks of leave during a twelve-month period where the employee has a serious health condition that renders him unable to perform the functions of his position. 29 U.S.C. § 2612(a)(1)(D). To protect these rights, the Act makes it unlawful for an employer "to interfere with, restrain, or deny the exercise" of a right created by the FMLA. *Id.* at § 2615(a)(1). An FMLA interference claim requires only that an employee "show that his employer deprived him of an FMLA entitlement; no finding of ill intent is required." *Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). To succeed on an interference claim, a plaintiff must show that he provided sufficient notice of his

intent to take leave. *Burnett*, 472 F.3d at 477; *see also Brown v. Automotive Components Holdings, LLC*, 622 F.3d 685, 690 (7th Cir. 2010).

This case turns on whether the notice the Plaintiff provided to the Defendant was sufficient. The regulations implementing the FMLA describe an employee's general responsibility to provide notice of the need for FMLA leave: the employee "does not need to expressly assert rights under the Act or even mention the FMLA to meet his or her obligation to provide notice, though the employee would need to state a qualifying reason for the needed leave *and otherwise satisfy the notice requirements* set forth in § 825.302 or § 825.303 depending on whether the need for leave is foreseeable or unforeseeable." 29 C.F.R. § 825.301(b) (emphasis added).

Unforseeable leave is governed by 29 C.F.R. § 825.303, which provides that "[w]hen the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). "It generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave." *Id.* (citing 29 C.F.R. § 825.303(c)). "When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. For example, an employer may require employees to call a designated number or a specific individual to request leave." 29 C.F.R. § 825.303(c). Further, if the "employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA[-]protected leave may be delayed or denied."

7

*Id.*

Without adequate notice, there is no prima facie case of unlawful interference. The Plaintiff does not dispute that he failed to contact Unum as set forth in the Defendant's FMLA policy. (*See* Mem. in Opposition 2, ECF No. 33 (acknowledging that "he did not contact Unum within two days of his July 27–August 4 absences, as Zimmer's internal policy requires").) Nor does he dispute that the Defendant usually required employees to notify both the Defendant and Unum of their request for FMLA leave within two days if the need for leave was not foreseeable. The Plaintiff asserts that the Defendant should not, in the circumstances of this case, have demanded strict compliance because "even if there was a technical violation of Zimmer's policy, there was no prejudice to Zimmer from that violation." (*Id.*)

The regulations permit—but do not require—an employer to waive its customary FMLA notice requirements. *See* 29 C.F.R. § 825.304(e) (noting that "[a]n employer may waive employees' FMLA notice obligations or the employer's own internal rules on leave notice requirements"). The regulation goes on to state that "[i]f an employer does not waive the employee's obligations under its internal leave rules, the employer may take appropriate action under its internal rules and procedures for failure to follow its usual and customary notification rules, absent unusual circumstances, as long as the actions are taken in a manner that does not discriminate against employees taking FMLA leave and the rules are not inconsistent with § 825.303(a)." *Id.* Notably, this standard does not incorporate a lack-of-prejudice inquiry.

Upon review, this Court cannot find that the Defendant's rules for providing notice are inconsistent with § 825.303(a), or otherwise discriminate against employees taking FMLA leave. The Plaintiff has not established, or even attempted to establish, that his circumstances made

8

compliance with the policy impracticable. By contacting his supervisory only, and not Unum, the Plaintiff was following the usual and customary procedures for reporting absences—not for providing notice of potential FMLA leave. If the Plaintiff wanted FMLA leave, § 825.303(c) dictates that he comply with his employer's policies. When he did not follow the notice requirement, the employer was within its right to deny leave even if the employee had a serious health condition. *See Aubuchon v. Knauf Fiberglass, GmbH*, 359 F.3d 950, 951–52 (7th Cir. 2004) (stating that "[c]onditioning the right to take FMLA leave on the employee's giving the required notice to his employer is the quid pro quo for the employer's partial surrender of control over his work force").

The Plaintiff's reliance on *Harvey v. Waste Management of Illinois, Inc.*, No. 08 CV 6828, 2010 WL 1741742 (N.D. Ill. Apr. 29, 2010), is misplaced. In *Harvey*, the court granted the plaintiff's motion for summary judgment even though the plaintiff failed to comply with her employer's usual and customary notice requirement. *Harvey*, 2010 WL 1741742, at *4. The court did so based on a version of a regulation that applies to foreseeable FMLA leave (not unforeseeable leave, which is the case here). *Id. at *4–5. That regulation, as it existed in 2008, provided that an employee's failure to follow procedures would "not permit an employer to disallow or delay an employee's taking FMLA leave if the employee gave timely verbal or other notice." 29 C.F.R. § 825.302(d) (effective to Jan. 15, 2009). The current version of 29 C.F.R. § 825.302(d) omits that language, and, importantly, there is no comparable language in the regulations that apply to foreseeable leave.

Nevertheless, the Plaintiff asserts that the Defendant could have designated the absences as FMLA-qualifying because he showed his supervisor his swollen leg and the infected rash on

9

his arm, and reported his absences in accordance with the Defendant's regular attendance policy, and thus provided enough information to give the Defendant constructive notice that his absences from July 27 through August 4 were for an FMLA qualifying reason. The Plaintiff also claims that he did not know in July 2015 that he needed to contact Unum within two days of his unforeseeable FMLA claim. The Court will address these claims in turn, beginning with the Plaintiff's knowledge, or lack thereof, of the Defendant's notice requirements for requesting or reporting FMLA leave.

The Plaintiff is not asserting that it was impracticable in his circumstances to notify Unum of his request for FMLA leave at the same time he notified the Defendant of his absences. He contends only that he was not aware of the requirement to do so. Notably, the Plaintiff does not dispute that he had electronic access to all of his employer's policies. (Pl.'s Dep. 184–85 (acknowledging his access to computers at work to view policies).) This is significant because the Plaintiff does not present any legal support for the proposition that subjective ignorance, if it is not accompanied by objective deficiencies in the employer's notice, excuses untimely notice under that policy. Indeed, the regulations provide just the opposite:

> In all cases, in order for the onset of an employee's FMLA leave to be delayed due to lack of required notice, it must be clear that the employee had actual notice of the FMLA notice requirements. This condition would be satisfied by the employer's proper posting of the required notice at the worksite where the employee is employed and the employer's provision of the required notice in either an employee handbook or employee distribution, as required by § 825.300.

29 C.F.R. § 825.304(a); *see also id.* § 825.300 (permitting electronic distribution and posting). The Plaintiff has not alleged, or presented any evidence to suggest, that his employer did not follow the notice requirements set forth in 29 C.F.R. § 825.300.

The Plaintiff's second excuse is, in essence, a claim that he provided an adequate reason

10

for the needed leave to his supervisors. However, whether he provided a qualifying reason, or not, would not make his notice timely and in accordance with the Defendant's customary requirements. That is a separate inquiry. Nevertheless, to make a complete record the Court considers whether there is a genuine dispute on this issue, that is, facts that would permit a reasonable jury to decide in favor of the Plaintiff.

Section 825.303(b) sets forth the required contents of a request for unforeseeable FMLA leave. It provides, in relevant part,

> **(b) Content of notice.** An employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request. Depending on the situation, such information may include that a condition renders the employee unable to perform the functions of the job; that the employee is pregnant or has been hospitalized overnight; whether the employee or the employee's family member is under the continuing care of a health care provider . . . . When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA. When an employee seeks leave due to a qualifying reason, for which the employer has previously provided the employee FMLA-protected leave, the employee must specifically reference either the qualifying reason for leave or the need for FMLA leave. Calling in "sick" without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act.

29 C.F.R. § 825.303(b). An employee must alert an employer to "the seriousness of the health condition." *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 826 (7th Cir. 2012) (quoting *Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 725 (7th Cir. 2007)).

The Plaintiff asserts that he provided the requisite notice, constructively, through the following: (1) he showed the first shift supervisor, Dulebohn, his infected arm sometime in June (Pl.'s Dep. 136) (stating that Dulebohn saw that it "was swollen. My skin was crack and irritated and pusing"), and again before his July absences; (2) he showed his supervisor, Semla, his arm once before he took off work in July; and (3) he showed Dulebohn his swollen legs in July.

11

With regard to his skin condition, the only recollection the Plaintiff had from the interactions with Dulebohn is that, in July, Dulebohn mentioned that the Plaintiff needed to "get some attention to it." (Pl.'s Dep. 138.) The Plaintiff did not relay any potential diagnosis, and, at that time, did not know what was causing the condition. (*Id.* at 138–39.) Other than showing Dulebohn his arm, the Plaintiff did not communicate anything about his skin condition to Dulebohn. (*Id.* at 141.) Neither did he communicate with Semla, and does not remember what, if anything, was said when the Plaintiff showed him his arm. (*Id.* at 144, 145.) In August, after he had received diagnosis and treatment, the Plaintiff again showed Semla his arm, and he commented that it looked a lot better than it did before. (*Id.* at 144–45.) The Plaintiff does not remember any comments associated with showing Dulebohn his swollen legs, and had not yet received any diagnosis. (*Id.* at 149–50.)

Based on the testimony provided in this case, it is a stretch to claim, as the Plaintiff does in response to the Defendant's request for summary judgment, that Dulebohn and Semla were "aware of both serious medical conditions." (Pl.'s Mem. in Opposition 4.) It is more accurate to say that they were aware that the Plaintiff was struggling with an eczema-like condition on his arms, but that he was still able to perform his job. Likewise, the Plaintiff had pulled up his pant leg once to shown Dulebohn the swelling, but he gave Dulebohn no reason to think that he was afflicted with a serious health condition that would render him unable to perform the functions of his job. Neither supervisor had medical records of any kind, or even statements from the Plaintiff himself, that would suggest he was seeing any medical professional about the conditions. *See* 29 U.S.C. § 2611(11) (defining a serious health condition as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or

12

residential medical care facility; or (B) continuing treatment by a health care provider"). Nor is there evidence in the record that they were aware, when the Plaintiff called in absent from work, that it was because he was seeking treatment for the conditions. Although there is no quarrel with the Plaintiff's claim that he provided the Defendant with notice of his absences, none of the designated evidence details what the Plaintiff communicated as the reason for his absences, or with which supervisor he communicated. Moreover, it should be noted that the Plaintiff testified that he did not contact Unum within two days of his leave in accordance with the FMLA policy because he was not requesting leave. (Pl.'s Dep. 121.) Rather, he was trying to find out the medical cause of his skin problems and leg swelling. (*Id.*) Thus, it is unlikely that the Plaintiff—who stated he was not seeking leave—provided sufficient information to permit the Defendant to determine whether FMLA leave applied. Even if he called in "sick," which is not clear he did, that would not be considered sufficient notice to trigger an employer's obligations under the Act absent additional information. *See Phillips v. Quebecor World RAI, Inc.*, 450 F.3d 308, 312 (7th Cir. 2006) ("An employee's reference to being 'sick,' however, does 'not suggest to the employer that the medical condition might be serious or that the FMLA otherwise could be applicable.'" (first quoting *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1009 (7th Cir. 2001); then citing *Price v. Ft. Wayne*, 117 F.3d 1022, 1026 (7th Cir. 1997))).

The Plaintiff's citations to various cases where the court found adequate FMLA notice does not persuade the Court that adequate notice was given in this case. In citing to these cases, the Plaintiff makes no meaningful attempt to specifically compare the facts of those cases to his

own situation. For example, he cites *Segura v. TLC Learning Center*, No. 12 C 7020, 2015 WL 93910 (N.D. Ill. Jan. 6, 2015), as a case where the employee was not held to strictly following the steps set forth in the employee handbook for requesting family leave. The plaintiff in *Segura*, however, had specifically stated in an email the need for family leave to take care of her seriously ill husband. *Segura*, 2015 WL 93910, at *4. In response, the defendant granted her the leave. It was only later that the employer acted to prevent her from exercising her right to her former position or an equivalent position when it informed her that another teacher had taken her place, that her insurance was being canceled, and that there was no position for her even if she returned to work prior to her leave expiring. *Id.* Under these circumstances, the court did not accept the employer's deposition testimony that she did not know the plaintiff was requesting leave under the FMLA or that the defendant was subject to the FMLA, as these claims were directly contradicted by the email exchange where the plaintiff requested family leave, and it was granted. *Id.* In this specific context, the court noted that, while the plaintiff may not have followed the steps for requesting family leave specified in defendant's employee handbook, the employer was put on adequate notice of a probable basis for FMLA leave and, in fact, granted the request without requiring additional information or actions. *Id.* The Court finds nothing in *Segura* to be applicable to the Plaintiff's claims or the circumstances of his absences and notice.

The Plaintiff also cites to *George v. Utility Trailers of Indianapolis, Inc.*, No. 1:12-CV-00711-SEB, 2014 WL 5509240, at *13 (S.D. Ind. Oct. 31, 2014), where the court held that material issues of fact existed regarding whether the notice sufficiently put the employer on notice of the need for an FMLA leave. In that case, the plaintiff was injured at work when he fell off a ladder, and two days later the plaintiff submitted medical paperwork recommending that he

not work for eleven weeks while undergoing physical therapy. *Id.* The court determined that this was unlike situations where employers are "required to divine or investigate whether an employee is covered under the FMLA at any minor request for leave." *Id.* The facts from *George* bear no resemblance to the facts of this case where there was no on-site injury, and no medical documentation suggesting a serious medical condition. "The requirement of notice is not satisfied by the employee's merely demanding leave. He must give the employer a reason to believe that he's entitled to it." *Aubuchon*, 359 F.3d at 952.

Finally, the Plaintiff cites *Burnett v. LFW, Inc.*, 472 F.3d 471, 481 (7th Cir. 2006), noting the court's conclusion that the employee's "proclamation of illness was supported by details suggesting a serious health condition." The Plaintiff, does not, however, attempt to compare the facts of the case to his own situation. Nor could he. In *Burnett*, the plaintiff requested leave, stating that he felt sick and wanted to go home—after he had already communicated over the course of the previous four months—that:

> (1) he was suffering from "a weak bladder," which was severe enough to preclude a potential transfer of assignment; (2) he was on a trajectory of increased medical visits and testing, including a blood test showing an elevated PSA; (3) he had recently had a prostate biopsy (a test that [his supervisor] knew was used to diagnose cancer) and requested help in his work duties as a result; (4) he repeatedly stated that he "felt sick" and intimated that his condition may be similar to his brother-in-law's latent prostate cancer; and (5) his concerns were significant enough for him to suggest that he might commit suicide if he ended up bedridden as a result of prostate cancer.

472 F.3d at 480. The court concluded that the plaintiff had, therefore, given "an account of symptoms and complaints, which formed a coherent pattern and progression, beginning with initial symptoms, continuing with doctor's visits, and then additional testing and results—all communicated (in one form or another) to [his supervisor]." *Id.* The Plaintiff gave no such

15

accumulating information about his medical condition in conjunction with his absences. As stated above, his notice consisted of showing his swollen legs to a supervisor on one occasion and showing this same supervisor and another supervisor the infection on his arm.

The undisputed facts of this case would not permit a reasonable jury to find that the Plaintiff had complied with the notice requirements of the Act, and that the Defendant had, nonetheless, interfered with his right to take protected leave. Accordingly, the Defendant is entitled to judgment as a matter of law.

B.      **ADA Failure to Accommodate Claim**

The second claim that the Plaintiff is pursuing is that the Defendant violated the ADA when it did not reasonably accommodate his disability. To prevail on a failure to accommodate claim, a plaintiff must show that (1) he is a "qualified individual with a disability"; (2) the defendant was aware of the disability; and (3) the defendant failed to reasonably accommodate the disability. *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 533 (7th Cir. 2013); *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005). The Plaintiff claims that the Defendant violated his rights under the ADA when it did not provide him the reasonable accommodation of "discipline[-]free time off for the three weeks he took off work to be diagnosed and treated for his disabilities." (Pl.'s Mem. in Opposition 16–17.) Under the Plaintiff's theory, the Defendant should have considered the Plaintiff's response to his suspension—to point out that all of his absences were related to medical conditions—as a request for the reasonable accommodation of not assigning points to the absences under the attendance policy.

A fatal problem with the Plaintiff's ADA claim is that the only accommodation he ever

requested (if he indeed ever requested one) is not reasonable. Reasonable accommodations are "[m]odifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(iii). The Plaintiff, in this case, was never denied the benefit of the ability to seek FMLA leave. He simply did not do so in accordance with his employer's policy. Importantly, he has not shown that his failure to follow the policy was due to his disability. Thus the accommodation he requests is not connected to his disability. "The ADA is an antidiscrimination statute, not a medical-leave entitlement." *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 479 (7th Cir. 2017). This Court agrees with the Western District of Wisconsin's assessment in *McKenzie v. Seneca Foods Corp.*, No. 16-CV-49-JDP, 2017 WL 1155966, at *6 (W.D. Wis. Mar. 27, 2017), that the ADA is "a poor fit for [the Plaintiff's] situation because [the Defendant's] FMLA policy offered all the accommodation that [the Plaintiff] needed; []he failed to take advantage of it." The *McKenzie* court rejected the plaintiff's argument that the defendant should have waived its procedural FMLA reporting requirements instead of assessing her attendance points that put her over the limit set by the defendant's attendance policy. *Id.* This Court, likewise, finds that the claim does not have merit.

According to the Plaintiff, his requested accommodation was not for "erratic and unreliable" attendance, which an employer is not required to accommodate. *See Taylor–Novotny v. Health Alliance Med. Plans, Inc.*, 772 F.3d 478, 489–90 (7th Cir. 2014); *Basden v. Prof's Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013); *EEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 950 (7th Cir. 2001). However, he can only make the argument that his request was for "a total of three discrete weeks of time he was off work to obtain diagnoses and treatment" (Pl.'s

17

Mem. in Opposition 21) because the absences had already occurred. But the Plaintiff has not pointed to any case where the retroactive excusing of absences, or of any other conduct that would normally justify termination of employment, was identified as a reasonable accommodation under the ADA. The Defendant, therefore, is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Defendant's Motion for Summary Judgment [ECF No. 29]. The Clerk will enter judgment in favor of the Defendant, and against the Plaintiff.

SO ORDERED on September 19, 2018.

                                    s/ Theresa L. Springmann
                                    CHIEF JUDGE THERESA L. SPRINGMANN
                                    UNITED STATES DISTRICT COURT